MICHAEL BAILEY
United States Attorney
District of Arizona

MARK J. WENKER
Assistant U.S. Attorney
Arizona State Bar No. 018187
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
mark.wenker@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>$10,000.00 in United States Currency,<br><br>Defendant *In Rem*. | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |

Plaintiff United States of America brings this Complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"):

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit property to the United States pursuant to 21 U.S.C. § 881(a)(6) because it was furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.,* or is proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*

2. This is a civil action *in rem* to forfeit property to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) because it is property which constitutes or is derived from the proceeds traceable to a violation of 18 U.S.C. § 1952, interstate travel and use of the mail

or any facility in interstate commerce with the intent to distribute the proceeds of unlawful activity as defined in 18 U.S.C. § 1952(b).

3. This is a civil action *in rem* to forfeit property to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (C) because it is property involved in a transaction or attempted transaction in a violation of 18 U.S.C. § 1956, money laundering, with the intent to promote the carrying on of a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7) and 1961, including but not limited to distribution of a controlled substance, and is property which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity.

4. Venue and jurisdiction is based upon 21 U.S.C. § 881(j) and 28 U.S.C. § 1355(b) and § 1395 as acts and omissions occurred in the District of Arizona give rise to this forfeiture action. This Court has jurisdiction. 28 U.S.C. §§ 1345 and 1355, and 18 U.S.C. § 981(h).

## THE DEFENDANT *IN REM*

5. The defendant consists of $10,000.00 in United States currency (the "Defendant Property") seized by the United States Postal Inspection Service on May 22, 2020.

## FACTS

*Suspicious Parcel*

6. On May 20, 2020 Inspectors were notified that a suspicious medium-sized United States Postal Service ("USPS") Priority Mail Express parcel, bearing USPS tracking number EJ 336 540 646 US and addressed to "tiffany holly, 1542 w. pierce st., Phoenix, AZ 85007" with a return address of "courtney miller, 2425 Dover st, Cincinnati, OH 45206" (the "Subject Parcel"), had arrived at the Phoenix Processing and Distribution Center.

7. The Subject Parcel was considered suspicious because unlike typical business mailings it had a handwritten label, was sent from one private party to another, and was coming from a drug demand area (Ohio) to a drug source area (Arizona).

2

8. Additional investigation by Inspectors showed that even though Tiffany Holly ("Holly") was associated with the recipient address, Shamir Prawl ("Prawl"), who had an extensive criminal record involving drug trafficking, also was associated with the recipient address.

9. Prawl had the following drug-related arrests:

   a. March 2015 – possess depressants/stimulants/hallucinogenic/anabolic steroids (disposition unknown), possess simulated controlled substances or drug paraphernalia (disposition unknown), and a taxation; no drug tax stamp marijuana/controlled substance (disposition unknown).

   b. December 2010 – trafficking in drugs (convicted).

   c. January 2009 – trafficking in drugs (disposition unknown), possession of drugs (disposition unknown), possession of cocaine (dismissed), trafficking in cocaine (convicted lesser offense), and trafficking in cocaine (convicted).

   d. March 2007 – violation of drug/device and cosmetic act (nolled prossed/withdrawn).

   e. August 2005 – violation of controlled substance/drug/device and cosmetic act (convicted).

10. Research also showed that that the sender, Miller, though actually associated with the sender address, also had an extensive criminal record involving drug trafficking.

11. Miller had the following drug-related arrests:

   a. June 2018 – trafficking in drugs (convicted).

   b. April 2018 – trafficking in drugs (disposition unknown), trafficking in hashish (convicted of lesser offense), possession of hashish (dismissed), and trafficking in marihuana (convicted of lesser offense).

   c. March 2017 – trafficking in drugs (disposition unknown) and trafficking in marijuana (convicted of lesser offense).

3

    d. October 2016 – trafficking in drugs (disposition unknown), possession of drugs (disposition unknown), possession of heroin (continued without finding), and trafficking in heroin (convicted of lesser offense).

  12. Based on training and experience, Inspectors know that the following are often indicators of drug traffickers using Express Mail to transport drugs and/or proceeds from the sale of controlled substances:

    a. The Express Mail parcel contains a label with handwritten address information and is addressed from one individual to another;

    b. The handwritten label on the Express Mail parcel does not contain a business account number, thereby indicating that the sender likely paid cash;

    c. The parcel is heavier than the typical Express Mail mailing, often weighing more than eight ounces;

    d. The parcel is either: i) destined for an area known to be a frequent destination point for controlled substances, having been mailed from an area known to be a source area for controlled substances; or ii) originated from an area known to be a frequent origination point for proceeds from the sale of controlled substances, having been mailed to an area known to be a destination area for proceeds from the sale of controlled substances; and

    e. Persons associated with the sender or recipient address, or both, have extensive criminal backgrounds involving drug trafficking.

  13. Also based on training and experience, Inspectors know that drug traffickers often use the U.S. Mail to transport controlled substances and currency derived from the sale of controlled substances. Traffickers are aware that Priority Mail and Priority Express Mail are protected against inspection without a federal search warrant, can be tracked, have dispatch times and locations that can be controlled, and most importantly have standardized delivery schedules. Traffickers also are aware that delayed

4

delivery of Express Mail is an indication that the mailing may have been compromised by law enforcement.

14. Attempts were made to call two telephone numbers associated with the Subject Parcel, but each was unsuccessful. The first call, to (513) 328-6825, was answered by a recorded message that said the service was "restricted" or "unavailable." Research showed it was a cell phone number belonging to Moniqu Brookins ("Brookins"). The second call, to (623) 522-2964, was answered by a recorded message that said the person could not accept calls at this time. Research showed this was probably a pre-paid cell phone number belonging to Robert Lamb ("Lamb").

15. Based upon the handwritten address label, the weight of the Subject Parcel, the designation and origination points of the Subject Parcel, the non-working phone numbers associated with the Subject Parcel that belonged to neither the sender nor recipient, and the extensive criminal histories involving drug trafficking of the persons associated with the sender and recipient addresses, Inspectors found the Subject Parcel to be suspicious.

*Narcotics Canine Alert*

16. On May 20, 2020, Inspectors met with Mesa Police Department Canine Handler/Detective Dawn Haynes and her narcotics detection canine "Nicole."

17. Detective Haynes has been a police officer for 19 years. Nicole is a three-year old Belgian Malinois, who has been working narcotics detection for the Mesa Police Department since February 2020.

18. Nicole and Detective Haynes currently hold a national certification in narcotics detection given by the National Police Canine Association ("NPCA"). Nicole was last certified by the NPCA on March 22, 2020.

19. Nicole is trained to detect the odors of cocaine, marijuana, heroin, methamphetamine and their derivatives. Nicole alerts to the odor of currency when such currency has been in recent proximity to such narcotic substances.

5

20. Nicole is a sophisticated drug dog. *See United States v. $132,245.00 in U.S. Currency,* 764 F.3d 1055, 1059 (9th Cir. 2014).

21. Detective Haynes said Nicole has been trained to positively alert to the odors of narcotics, and/or currency, notes, documents or evidence bearing the presence of these odors, by laying down next to the item containing these odors. Detective Haynes described this type of positive alert as a "passive" alert.

22. Since working at the Mesa Police Department Nicole has had no less than 100 successful finds (both training finds and finds which have contributed to active investigations) of controlled substances and/or the proceeds from the sales of controlled substances.

23. At approximately 8:05 a.m. on May 20, 2020, Nicole gave a positive alert to the Subject Parcel as having the presence of one or more of the above-mentioned drug odors or their derivatives. Nicole positively alerted to the Subject Parcel by exhibiting a change of behavior and laying down next to it.

*Execution of Search Warrant*

24. Based upon the information listed above, Inspectors requested and received a search warrant for the Subject Parcel.

25. Upon execution of the search warrant on May 22, 2020, Inspectors found the Subject Parcel to contain two empty crumpled Tyvek Priority envelopes, a sheet of bubble wrap, and an iPhone cardboard box. Concealed inside the iPhone box was a vacuum-sealed plastic bag containing a rubber-banded bundle of U.S. Currency totaling $10,000 (the "Defendant Property").

26. The Subject Parcel did not contain any notes, receipts, or instructions.

27. Based upon their training and experience, Inspectors know that people transporting drugs or drug proceeds in parcels often secrete or conceal drugs or drug proceeds within vacuum-sealed bags. Drug traffickers package items in this manner in an attempt to avoid the detection by trained narcotics canines.

6

28. The Defendant Property consisted of 99 one-hundred dollar bills and two fifty-dollar bills.

29. When a legitimate business sends currency, or a private party sends a personal gift of currency, the money typically is accompanied with notes, letters, receipts, cards, or coupons.

30. The overwhelming majority of people conducting a business transaction find it much more reasonable, practical, and safe to use a financial institution when making payments. Such payments are made securely in the form of a wire transfer, a check, a money order, or a cashier's check. By contrast, a payment made by mail with cash is much less secure because it can be lost or stolen, leaving no recourse for the parties involved. Drug traffickers often mail cash, constituting proceeds of their illegal conduct, to avoid creating any banking or wire transfer records that would lead to their detection.

*Telephone Calls Regarding the Defendant Property*

31. On May 20, 2020, a male individual who identified himself as "Robert Lamb" called the Post Office to inquire as to the whereabouts of the Subject Parcel. Lamb stated his address was 1542 W. Pierce St., Phoenix, AZ 85007 and he provided a phone number of 623-522-2964 (the same phone number listed above the destination address on the Subject Parcel's mailing label). He further stated he had not received his package which contained electronics. The Postal employee informed Lamb the package had not arrived at the destination Post Office and he would be notified when it arrived.

32. Between May 28, 2020 and June 1, 2020, an individual who identified herself as "Tiffany Holly" called the West Valley Express Mail line (controlled by the Inspection Service). Holly provided a tracking number of EJ 336 540 646 US. She left a call back phone number of 623-219-9009.

33. Research revealed the phone number was possibly assigned to a wireless phone. Holly was associated with the phone number. However, there was no address listed.

7

34. On June 1, 2020, Inspection Service personnel (acting as a Postal employee) placed a phone call to 623-219-9009 and spoke with a female who identified herself as "Tiffany Holly." When asked, Holly provided the tracking number for the Subject Parcel and stated her address was "1542 W. Pierce St., Phoenix, AZ 85007." She was unable to provide the return address for her cousin, Courtney Miller, but she stated the package was from Cincinnati, OH.

35. Inspection Service personnel asked when the package was mailed and she indicated it was mailed on Monday, May 18th, for delivery on May 19th. When asked what the package contained she said it was an iPhone box. She said it did not contain an iPhone but contained a personal item. She further stated she does not know why her package was taken because it did not contain anything illegal. She said the tracking said it was seized but did not provide a phone number for the Inspection Service. Inspection Service personnel offered to call the Inspection Service to find out any information about her package and call her back.

36. On June 3, 2020, Postal Inspectors placed a phone call to "Tiffany Holly" at 623-219-9009. A female individual answered the phone call and verified she was "Tiffany." The Postal Inspector identified himself to Holly and informed her that several attempts had been made to call the phone numbers listed on the Subject Parcel's mailing label but the phone numbers were not working.

37. Holly verified the tracking number. The Inspector advised Holly the parcel triggered suspicions on a routine screen and a narcotics detection canine alerted to the box. Holly stated there should have been no way a dog would alert to the box, there was no drugs and nothing illegal in the box. She stated she would not be claiming or looking for a box if she knew it contained something illegal.

38. The Postal Inspector asked Holly what she was expecting in the box. She admitted she was expecting money she was saving for a house. The money was from taxes and other saving and she said she had issues sending amounts through Western Union. Holly stated she was from Cincinnati, Ohio, and still had her mother and other family

8

back there and had some of her money there as well. She stated her cousin, Courtney Miller, sent her the money.

39. The Postal Inspector asked Holly what address Miller would have used for the package. She did not know what address he used and did not believe he had a stable address. The Postal Inspector asked Holly for the address the package was being sent to. She verified the parcel was being sent to her at 1542 West Pierce Street, Phoenix, AZ 85007.

40. The Postal Inspector asked Holly why the money was in an iPhone box in a vacuum sealed bag. She admitted she was aware how the money was being packaged and stated it was done in that way because she wanted to secure the money in case the box broke open.

41. Holly was asked who "Robert Lamb" was because he had called about the package as well. She stated Lamb is her brother. She said he and several other people were trying to help her get her money back. She said he was more upset about the process she had to deal with to get her money.

42. The Inspector advised Holly that Lamb identified his phone number as 623-522-2964 which was listed on the Subject Parcel's mailing label. The Inspector further stated when he attempted to call Lamb at that number, it was no longer in service. Holly stated 623-522-2964 was the number for Lamb and should have been a good working number. She added he might have turned off his phone that day.

43. Holly did not address why Lamb's phone number was on the label instead of her own. The Inspector advised Holly that attempts had also been made to contact the sender, Courtney Miller, at 513-328-6825. However, the phone number was also a non-functional number. Holly stated she did not know why the number listed for Miller was not working either.

44. The Inspector informed Holly that the administrative forfeiture process had been initiated and she would be receiving notification of the process within 60 days. She was also informed letters would be mailed to Lamb and Miller.

***Administrative Claim by Tiffany Holly***

45. On August 10, 2020, the Asset Forfeiture Unit for the USPIS received an administrative claim to the Defendant Property by Holly.

46. Holly stated in the claim "That was my money sent to my address in Arizona from Ohio it was tax money and work checks I had been saving up for bills and other responsibilities I didn't know that it was a problem sending money like that through the mail ."

47. Holly also included a picture of a pay stub from her employer dated May 22, 2020. It showed a net pay of $523.89 for that 15-day pay period.

48. On August 27, 2020, the USPIS sent a follow-up letter to Holly requesting additional information and documentation in regard to her earlier administrative claim. Holly was asked for a written statement, sworn to under the penalty of perjury, that described her interest in the Defendant Property, as wells as for documents and answers to the following questions:

    a. Why Courtney Miller was in possession of money that belonged to Holly and was reportedly from "tax money and work checks I had been saving up for bills…"

    b. How long Holly was saving the money?

    c. How much money in total did Holly have saved?

    d. To provide documentation regarding the source of the currency;

    e. To provide filed Federal Income tax returns, business (if applicable) and personal, for the tax year 2019;

    f. To explain why cash was mailed instead of a financial instrument or wire transfer;

    g. To explain the reason the "signature required" service was waived for a parcel containing $10,000.00 in cash;

    h. To explain the manner in which the currency was packaged, including why it did not contain any identification or documentation;

  i. To explain why Robert Lamb's phone number appeared on the mailing label above the destination address;

  j. To explain why Robert Lamb called the Post Office to inquire as to the whereabouts of the Subject Parcel and to explain why he stated the package contained "electronics" and why he represented himself as the intended recipient;

  k. To explain why a trained narcotics detection canine alerted to the presence and/or of controlled substances on The Subject Parcel;

  l. To state if Holly, Courtney Miller or Robert Lamb had ever been arrested for narcotic/drug violations? If so, when was the arrest(s) and what was the disposition(s)?

  m. To state whether Holly received any other Priority Mail or Priority Mail Express items from Mr. Miller or anyone else in Ohio. If so, what was the nature of those mailings and what did they contain?

  n. To explain why Courtney Miller did not file a Claim or submit a Petition for currency he mailed; and

  o. To provide current telephone numbers for Courtney Miller and Robert Lamb where they can be reached during normal business hours, in the event it is necessary for Postal Inspectors to interview them regarding the mailing of the Subject Parcel.

49. Holly did not respond to the USPIS' request for additional claim information and documentation.

50. Inspectors found Holly's unwillingness to provide proof regarding the source of the Defendant Property, or to answer any additional questions regarding the Subject Parcel, and those associated with it, to be suspicious and indicative of a person trafficking in drugs and drug proceeds.

11

51. On August 27, 2020, the USPIS mailed Holly an acknowledgment letter notifying her of the acceptance of his administrative claim and that the matter had been referred to the United States Attorney's Office.

*Follow-up Investigation by USPIS*

52. The USPIS performed a follow-up investigation on the Subject Parcel, Holly, and her address.

53. Upon further research, Inspectors identified approximately nine suspicious parcels coming from Ohio to the subject address in Phoenix between July 2019 and April 2020. The parcels were not intercepted by the USPIS, but are believed to have contained narcotics proceeds based on similar characteristics to the Subject Parcel, such as origin, destination, address information, size, and weight.

54. On August 14, 2020, a wage inquiry for Holly in the State of Arizona showed she had a reported income of $22,069.69 in 2018, $27,423.48 in 2019, and $8,751.07 for the first half of 2020.

55. Those trafficking in drugs and/or drug proceeds often possess large amounts of currency even if their incomes are relatively modest by comparison.

*Summary*

56. The following factors show that the Defendant Property was the proceeds of drug trafficking, was involved in drug trafficking and money laundering, and facilitated drug trafficking:

   a. The suspicious nature of the Subject Parcel (handwritten label, weight, and destination and origination points);
   b. The alert to the Subject Parcel by a trained narcotics canine;
   c. The suspicious nature of the Subject Parcel's contents (large amount of vacuum-sealed currency with no instructions, notes, or receipts);

    d. The prior nine similarly suspicious packages sent to Holly's address during a ten-month period from the same origination point;

    e. Holly's inability to provide a legitimate source for the Defendant Property;

    f. The criminal histories involving drug trafficking of persons associated with the sender and recipient addresses (Miller and Prawl);

    g. The phone numbers listed on the package were neither to the sender nor recipient of the Subject Parcel, and neither was operable when USPIS tried to contact persons at them;

    h. Robert Lamb's interest in the Subject Parcel, even though he was neither the sender nor the recipient of it;

    i. Holly's lack of significant legitimate income to possess such a large amount of currency; and

    j. Holly's inconsistencies and suspicious answers when speaking to the USPIS, including:

        i. First stating that the Subject Parcel contained a personal item in an iPhone box, then later admitting it actually contained currency;

        ii. Not knowing the sender's address (her alleged cousin Miller);

        iii. Not knowing why the phone numbers on the parcel belonged to Lamb and Brookins, neither of which were the sender nor recipient of the parcel; and

        iv. Why neither Lamb nor Brookins' numbers worked when called.

## FIRST CLAIM FOR RELIEF

The Defendant Property was furnished or intended to be furnished by a person in exchange for a controlled substance or listed chemical in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, or is proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of Title II of the

Controlled Substances Act, 21 U.S.C. § 801 et seq., and therefore is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6).

## SECOND CLAIM FOR RELIEF

The Defendant Property constitutes or is derived from proceeds traceable to some form of specified unlawful activity, conducted and attempted to conduct a financial transaction, i.e., the movement of the proceeds of trafficking in controlled substances, with the intent to promote and carry on trafficking in controlled substances in violation of a violation of 18 U.S.C. § 1952, and therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

## THIRD CLAIM FOR RELIEF

The Defendant Property is property involved in a transaction or attempted transaction in a violation of 18 U.S.C. § 1956, money laundering, with the intent to promote the carrying on of a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7) and 1961, including but not limited to distribution of a controlled substance, and is property which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity, and therefore is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

## NOTICE TO ANY POTENTIAL CLAIMANT

If you assert an interest in the subject property and want to contest the forfeiture, you must file a verified claim that fulfills the requirements set forth in Supplemental Rule G. To avoid entry of default, a verified claim must be filed no later than thirty-five days from the date this Complaint has been sent in accordance with Supplemental Rule G(4)(b).

An answer or motion filed under Fed. R. Civ. P. 12 also must be filed no later than twenty-one days after filing the claim. The claim and answer must be filed in the United States District Court for the District of Arizona under the case number listed in the caption above and a copy must be served upon the undersigned Assistant United States Attorney at the address provided in this Complaint.

This notice provision does not provide you with any legal advice and is designed only to provide you with a general understanding of these proceedings. Any statements made in your claim or answer may be introduced as evidence against you in any related or future criminal case. You should consult an attorney to represent your interests in this matter, and note that a stay of proceedings may be available under 18 U.S.C. § 981(g)(2).

IF YOU ARE A VICTIM, and have sustained economic loss as a result of the crime(s) giving rise to this civil action, you may be entitled to petition for remission, mitigation, or restoration under Title 28, Code of Federal Regulations ("C.F.R."), section 9.2. In lieu of filing a Claim with the Court, you may promptly submit a letter outlining your interest in the property to the undersigned Assistant United States Attorney. Plaintiff will notify you when it has received your letter, and further instructions may be provided upon conclusion of this action. The United States Attorney General shall have sole responsibility for disposing of petitions for remission or mitigation with respect to property involved in a judicial forfeiture proceeding under 18 U.S.C. § 981(d) and 21 U.S.C. § 881(d). If your status as a victim is contested, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

IF YOU ARE A LIENHOLDER, it is the policy of the United States Attorney's Office to honor all claims received from legitimate titled lienholders as defined under 28 C.F.R. § 9.2. In lieu of filing a claim with the Court, you may send a letter to the undersigned Assistant United States Attorney outlining your interest in the property, including: (1) the amount presently owed on the lien; (2) a copy of the security agreement setting forth your interest; and, (3) whether the owner is in default. If your lien is sufficient, Plaintiff will notify you to verify receipt of your letter. In the event of forfeiture, and to the extent practicable, proceeds from the sale and disposition of the subject property will be remitted to you in satisfaction of the lien. As noted above, timely receipt of your letter will not shield you from entry of default for failing to file a proper claim with the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States of America prays that process of warrant *in rem* issue for the arrest of the Defendant Property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendant Property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted this November 5, 2020.

                MICHAEL BAILEY
                United States Attorney
                District of Arizona

                *S/Mark J. Wenker*
                MARK J. WENKER
                Assistant United States Attorney

**VERIFICATION**

I, Antoine Martel, verify and declare under penalty of perjury, that I am an Inspector with the United States Postal Inspection Service, that I have read the foregoing Complaint for Forfeiture *In Rem* and know the contents, and that the matters contained in the Complaint are true to my own knowledge, except that those matters alleged upon information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case.

I verify and declare under penalty of perjury that the foregoing is true and correct. Executed on this 3rd day of November, 2020.

_____
Antoine Martel
Postal Inspector
United States Postal Inspection Service

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the District of Arizona.

**The completed cover sheet must be printed directly to PDF and filed as an attachment to the Complaint or Notice of Removal.**

**Plaintiff**(s): **United States of America**

County of Residence: Maricopa

County Where Claim For Relief Arose: Maricopa

**Defendant**(s): **$10,000.00 in United States Currency**

County of Residence: Maricopa

Plaintiff's Atty(s):

Mark J. Wenker , AUSA
40 N. Central Ave., Ste. 1800
Phoenix, Arizona  85004
602 514-7500

Defendant's Atty(s):

<u>II. Basis of Jurisdiction</u>:	**1. U.S. Government Plaintiff**

<u>III. Citizenship of Principal Parties</u>
**(Diversity Cases Only)**
Plaintiff:- **N/A**
Defendant:- **N/A**

<u>IV. Origin</u> :	**1. Original Proceeding**

<u>V. Nature of Suit</u>:	**625 Drug Related Seizure of Property 21 USC 881**

<u>VI.Cause of Action</u>:	**Forfeiture in Rem**

<u>VII. Requested in Complaint</u>
Class Action: **No**
Dollar Demand:
Jury Demand: **No**

<u>VIII. This case</u> **is not related** to another case.

**Signature:** <u>s/ Mark J. Wenker</u>

**Date:** <u>11/05/2020</u>

**If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, save this form as a PDF and include it as an attachment to your case opening documents.**

**Revised: 01/2014**